JOSÉ A. DOMÍNGUEZ, Plaintiff and Appellant, *v.* CARMEN NADAL DEL MORAL, ETC., Defendant and Appellee.

No. 6042. Decided September 29, 1934.

*Guerra Mondragón & Soldevila* for appellant.  *José Sabater* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

The plaintiff has once again moved for a reconsideration of our judgment in the above entitled case. It is insistently urged that Francisco del Moral could not represent Carmen Nadal, the incapacitated person, in the foreclosure proceedings brought by the said Carmen Nadal through del Moral, who was then acting as her guardian, against José A. Domínguez, the plaintiff herein. The above is advanced as a ground of nullity. The opinion delivered by us in which the question raised was determined reads as follows:

"Francisco del Moral acted as guardian of Doña Carmen Nadal under a judicial appointment, which he accepted and exercised until this Supreme Court held that in accordance with the Civil Code, when the incapacity of a parent is involved, the guardianship pertains to the eldest child, whether male or female. Mr. Del Moral was acting as guardian of the incapacitated person during the pendency of the foreclosure proceeding now sought to be annulled, which proceeding was prosecuted for her benefit in order to recover the amount of a debt. According to Section 56 of the Code of Civil Procedure, when an infant or an insane or incompetent person is a party, he must appear, either by his general guardian or by a guardian *ad litem* appointed by the court in which the action is pending, in each case, or by the judge thereof. Even conceding that Francisco del Moral could not discharge the office of general guardian at the time of the institution or termination of the foreclosure proceeding, it would always result that the lower court authorized said gentleman to enforce the mortgage credit by summary process. Mr. del Moral requested such authorization of the court, and if the latter, after being advised of the

558

purpose sought, authorized said Mr. Del Moral to institute the said proceeding on behalf of the incapacitated person, we thing that the same should not be annulled merely because the eldest child of Doña Carmen had not as yet been appointed her general guardian. The truth is, as stated by the attorney for the defendant, that there existed a mortgage deed executed by the plaintiff in favor of Doña Carmen Nadal, that the mortgage had become due; that the plaintiff did not pay the principal or interest thereon, and hence the creditor was entitled to enforce her credit; and that the fact that Mr. Francisco del Moral acted with judicial authority, on behalf of the incapacitated person, who is his own mother, does not warrant the annulment sought on the ground that the eldest child of the incompetent person had not been appointed her general guardian. Doña María del Carmen, eldest daughter of the incapacitated person, was appointed as guardian, and in that capacity appeared in this suit for the purpose of opposing the annulment of the foreclosure proceeding sought by the plaintiff. The appearance of the incompetent person through her lawful guardian revealed her assent to all the acts performed by Mr. Francisco del Moral in the prosecution of said proceeding.'' *Domínguez* v. *Nadal*, 45 P.R.R. 457, 480.

■■ Section 186 of the Civil Code, 1930 ed., (Section 256 of the Civil Code, Comp. 1902, as amended by Act No. 48, Session Laws of 1930, p. 368), fixes the order according to which persons upon whom the guardianship of insane persons and deaf-mutes shall be appointed the Subdivision 5 thereof provides that ''If there are several children or brothers, the eldest shall be preferred.'' In *Del Moral* v. *District Court,* 41 P.R.R. 524, this court set aside an order of the District Court of Mayagüez appointing Francisco del Moral as guardian of Carmen Nadal, because although the motion regarding the declaration of incapacity for the appointment of guardian was verified, no compliance was had with the requisites prescribed in Sections 74 and 75 of the Law of Special Legal Proceedings, confining itself to state that such appointment should be made in favor of Francisco del Moral, without stating upon oath that the latter is the eldest of the children of Carmen Nadal del Moral. Upon the decision of this court, María del Carmen del Moral

secured, on her motion, the appointment as guardian of her mother.

It is to be noticed that Section 178 of the Civil Code, 1930 ed., when establishing the order in which the guardianship of unemancipated children shall be exercised, says that, after the grandparents, said guardianship belongs to the eldest brother, etc., whereas Section 186 of the same statute, when treating of the guardianship of insane persons and deaf-mutes, states that should there be several children or brothers the eldest shall be preferred.

So that where there are no paternal or maternal grandparents but only brothers of unemancipated minors, the court shall appoint to the guardianship the eldest brother, and where there are no grandparents but only children or brothers of insane persons and deaf-mutes, the court shall prefer the eldest.

Francisco del Moral, a son of the incapacitated person, was originally appointed as her guardian. Under the law, his eldest sister was entitled to be first appointed. However, the appointment was given to the eldest male son, under whose guardianship Carmen Nadal del Moral, acting through her son and guardian, brought and prosecuted the foreclosure porceeding sought to be quashed. In our opinion, there is involved a question of preference that can not be as important as pretended by the defendant. There is no doubt that in the absence of an elder sister, Francisco del Moral would have been entitled to exercise the guardianship.

The appointment of a guardian under such circumstances can not bring about the nullity of an act executed in favor of the incapacitated person, like the recovery of a debt by judicial proceedings. Who can be prejudiced by the bringing of the present action by the guardian in behalf of the incapacitated person? The mortgagor? Certainly not. The appearance of the incapacitated person through her original guardian did not deprive the mortgagor of any defence. It is argued that within the summary foreclosure proceeding no

proper demurrer could be filed to the complaint. We very much question that such demurrer could have been successfully filed within an ordinary action. Francisco del Moral acted as tutor until the order appointing him was set aside. No action for nullity lies in a case like the one at bar where the plaintiff has not been shown to have been prejudiced by the appearance of the incapacitated person in the foreclosure proceeding through her original guardian.

We have made a careful search hoping to find in the jurisprudence a solution to the question at issue. We have failed to find anything in the works of the Spanish commentators consulted by us or in the decisions of the Supreme Court of Spain. There is a Louisiana case (*Markham* v. *Schardt,* 26 La..Ann. 703) which, though it does not directly settle the most question, deserves, however, to be mentioned. We say the same as regards the case of *Spaun* v. *Collins,* decided by the Supreme Court of Mississippi.

In *Markham* v. *Schardt, supra,* the nomination as guardian to two minors was given to a person who was not a relative, pursuant to Section 271 of the Revised Civil Code of Louisiana which authorizes the appointment of a guardian without bond, upon the advice of a family meeting, when no one will take the guardianship and comply with the law requiring a bond. The said Civil Code provides that where both parents have died without nominating a guardian, or if the guardian thus appointed has not been confirmed or has been excused, then the judge ought to appoint to the guardianship the nearest ascendant in the direct line of the minor. In case there shall be more than one ascendant in the same degree, in the direct line, but of different sexes, the guardianship shall be given to the male. In case there shall be more than one ascendant in the same degree, in the direct line, and of the same sex, the judge shall appoint one of them as guardian by and with the advice of the family meeting. The grandmother of the minor is the only woman who has a right to claim the guardianship by the effect of the

law, but she is not compelled to accept it. The above provisions appear in Sections 263, 264, 265 and 266 of the Revised Civil Code of Louisiana.

The grandmother of the minors sued to annul the appointment because the person nominated as guardian neither alleged nor proved that there were no relatives of said minor entitled by law to the guardianship; because the proceedings of the family meeting were not unanimous; because the nominated guardian had not given bond, nor alleged that no one else was willing to accept the guardianship; and because the grandmother was the only surviving relative entitled by law to the guardianship which she was willing to accept. The Supreme Court of Louisiana held that the grandmother, by timely proceeding, could have procured the appointment in preference to others, but that a guardian having been duly appointed, she could not urge such right as a ground for his removal or the annulment of his appointment.

In *Spaun* v. *Collins*, 18 Miss. (10 Smedes & M.) 264, 25 Cent. Digest, Guardian and Ward, pp. 312, 313, construing a provision giving preference to the natural guardian or next of kin, if any such apply for appointment, unless the applicant be manifestly unsuitable, it was held that the court may prefer the next of kin to a stranger, and that if the stranger be appointed on petition of the stepfather of minor children, it will be the duty of the court, on petition of the next of kin for letters of guardianship, to remove him and appoint the next of kin, where the children are under 14.

The decision of the Supreme Court of Louisiana acknowledges the right of the grandmother to the appointment as guardian, in preference to any person not a relative, where the appointment is timely applied for; but it denies the right to procure the removal of the appointee or nullity of the appointment after such guardian has been duly appointed.

The Mississippi decision recognizes the right of the next of kin to procure the removal of a stranger who has secured

an appointment as guardian but fails to say whether such next of kin can obtain its nullity.

The above decisions show the tendency of courts in the construction of laws relating to the appointment of a guardian.

This court annulled the order nominating Francisco del Moral as the guardian of the incapacitated woman on procedural grounds, but our decision can not have the scope of nullifying all the acts executed by the former in exercising his guardianship, who acted as the guardian of the aforesaid incapacitated person until the rendition of our decision.

The lower court, upon motion, authorized Francisco del Moral, as the guardian of the incapacitated person, to collect the mortgage credit by judicial proceedings. Once the foreclosure proceeding was initiated under express authority from the court in order to execute an act for the benefit of the incapacitated person, even where said guardian is not a general guardian, he could be considered as a guardian *at litem* or a *de facto* guardian. In most jurisdictions the general rule now prevailing is that an incapacitated person should be represented by his general guardian, if he has any, and, if not, by special guardian or guardian *ad litem*. 32 C.J. 770. par. 586. The term *quasi guardian,* or *guardian de son tort,* has been applied in equity to persons who, without legal appointment or qualification, assume the functions of a guardian by exercising control over the person or estate, or both, of a minor. *Zeideman* v. *Molasky,* 118 Mo. A. 106, 114, 94 S.W. 754; 28 C.J. 1064, par. 19. A *de facto* guardian will be held subject to all the duties and responsibilities of an ordinary guardian. This, as regards his responsibilities. *In re Smith* v. *Cameron,* 158 Mich. 174, 122 N. W. 564. The right has been also acknowledged to such a guardian to receive an equitable allowance for expenses incurred for the benefit of his ward, provided such expenses would have been authorized in the case of a guardian legally appointed. *In re Beisel,* 110 Cal. 267. Making a wider application of the

above principles, based on equitable grounds, a guardian who collects a credit for the benefit of his ward, without any prejudice to the debtor, might perhaps be considered also as a *de facto* guardian. We hold, nevertheless, that in the foreclosure proceeding Francisco del Moral acted within the scope of his powers as the then general guardian of the incapacitated person.

We said in our original opinion that the appearance in the instant case of the incapacitated person through her legal guardian in opposition to the nullity of the foreclosure proceeding shows her approval of the steps taken by Francisco del Moral in the said proceeding. In her capacity as guardian of the said incapacitated person, María del Carmen del Moral alleges that her brother Francisco ''brought the aforesaid foreclosure proceeding against the plaintiff as the guardian of the defendant, with authority from this court and in good faith.'' The guardian finally prays for a dismissal of the complaint in which the nullity of the foreclosure proceedings is sought.

It is alleged by the plaintiff that María del Carmen del Moral, as guardian, could not ratify the illegal steps of the alleged former guardian and that such ratification could neither bind the appellant nor deprive him of any right. To our mind, the conduct of the legal guardian in ratifying the acts of the former guardian in connection with the foreclosure proceeding may be an element to be considered in settling the question at issue.

In *Taylor* v. *Superior Court,* 30 R.I. 560, 76 Atl. 644, a person of full age, subjected to guardianship for want of discretion in the management of his estate, filed a claim in the proper court for services rendered to a decedent whose estate was under judicial administration. The claim was rejected and then the ward brought a suit in his own name to recover from the administrator the amount claimed. Upon the death of the general guardian, his successor applied to the court for leave to intervene in the suit brought by his

ward in the latter's own name apparently without the consent of the former guardian. The motion was granted and the administrator sought to review the proceeding by certiorari. It was held by the court that the acts of a ward, not prohibited by law, where beneficial to him, are valid, and the court expressed itself as follows:

"The suit is not a nullity. We held in *Taylor* v. *Superior Court* 30 R. I. 200, at page 204, 74 Atl. 482, at page 483, regarding the suit in question: 'The suit was therefore improperly brought by the ward in his own name, was improperly maintained by him, and was improperly amended in his behalf.' But we also said: 'The question of whether the unauthorized acts of the ward can be ratified and validated by the guardian is a question not presented in this case.' The question is now brought squarely before us. We have never said, and never intended that we should be understood as saying, that the suit is a nullity. The suit was abatable as it was brought, maintained, and amended, because these acts were severally done by, or at the request of, the ward without the concurrence of his guardian. But the suit never has been abated, and the guardian, at last, has arrived and has moved for leave to intervene and amend the process and pleading, which motions have been granted by the superior court. What harm has been done thereby and in what particular has the defendant cause for complaint? For want of discretion in the management of his estate, Henry J. Ralph was subjected to guardianship and became ward. Therefore it is not to be presumed that he is capable of judging whether such a suit is or is not for his benefits. . . . But of this he is not permitted to be the judge, as the law has placed a guardian over him whose judgment supplants his. Nevertheless, he filed his claim and attempted to employ attorneys who brought his suit within the proper time, and it now appears that his guardian is of the opinion that it was for the benefit of his ward to have attorneys employed to institute such a suit, and, such a suit having been instituted, that the same should be maintained and that the employment of said attorneys and their acts in the premises should be ratified and validated as if the original employment and acts thereunder had been at the request of and with the approval of said guardian. Who is to be injured thereby? Not the ward, whose interest it is the duty of all tribunals, to conserve. Not the defendant, for, if he has a good defense to the action when trial upon its merits, he will not only obtain judgment, but will also recover his costs,

which he could not if the suit were abated for the reason set out in his plea; and, if he has no valid defense against the claim of the plaintiff, he cannot complain if judgment should be rendered against him.''

The opinion of the Supreme Court of Rhode Island ends as follows:

''As the claim was properly filed, and the suit, which we have decided was not a nullity, but one capable of being ratified and validated by the guardian, if, in his opinion, it was for the benefit of his ward, was brought within the statutory period, and the same has been ratified, validated, and amended so as to show that it is now the suit of the ward maintained with the consent of his guardian, it follows that the third and fourth objections of the petitioner are unsound . . .''

As stated by us before, we very much question that the complaint could have been excepted and abated in the event that payment of the mortgage credit had been sought by means of an ordinary action. We are inclined to think that such demurrer would not have prospered. We say again that the foreclosure proceeding brought by the guardian in behalf of the incapacitated person can not be invalidated on the ground that the order appointing said guardian had been set aside. Del Moral acted then as the guardian of his mother within the scope of the guardianship. Besides, the legal guardian, lately appointed, has appeared in the present action and accepted and ratified the acts of the former guardian.

As to the other questions treated in the new motion for reconsideration, we adhere to the conclusions established in our original opinion.

The motion for reconsideration must be denied.